IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA         :
                                 :        **Criminal Action No. 1:05-CR-422**
v.                               :
                                 :        **(Chief Judge Kane)**
FAUSTO L. CABRERA,               :
     Defendant                   :

## MEMORANDUM

On October 25, 2005, Defendant Fausto Cabrera and three others were arrested in connection with a controlled drug purchase.  Following the arrest, the Government searched the trunk of Cabrera's vehicle, and therein discovered a black bag containing approximately $38,000 in cash.  Before the Court is Cabrera's pretrial motion to suppress evidence obtained following Defendant's arrest, including the black bag.  (Doc. No. 118.)  For the following reasons, the Court will deny the motion.

## I.    BACKGROUND

On October 25, 2005, Jose Andujar, Jorge Agront, Jonathan Almanzar, and Fausto Cabrera were arrested at a Perkins restaurant in Harrisburg, Pennsylvania.  According to the Government, Andujar had previously arranged to purchase 50-100 kilograms of cocaine from a confidential informant at the restaurant.  On the morning of the 25th, Andujar, Agront, and Almanzar arrived at the scene together in a rented vehicle.  Cabrera later arrived in a separate vehicle, in a livery taxi that Cabrera drove from New York.  At some point around noon, Andujar met with the confidential informant.  Andujar then contacted Cabrera at around 12:50 p.m. via mobile phone.  Cabrera thereafter appeared, and showed the confidential informant a black bag containing some CDs and a significant amount of currency.  The confidential informant then left the scene, and at approximately 2:30 p.m., Andujar, Agront, Almanzar, and Cabrera were

arrested.

On October 26, 2005, Cabrera was charged with conspiracy to possess a controlled

substance with intent to distribute in violation of 21 U.S.C. § 846.  That same day, Cabrera

pleaded not guilty.  On November 1, 2005, Cabrera was released on his own recognizance.  On

September 20, 2006, a superseding indictment was filed against Cabrera, adding a second count

for traveling in interstate commerce in aid of a racketeering enterprise in violation of 18 U.S.C.

§ 1952.  Cabrera again pleaded not guilty.

On October 19, 2006, Cabrera filed a motion to suppress evidence discovered during the

search of his vehicle and his person that took place after his arrest.[1]  (Doc. No. 118.)  Cabrera

contends that the Government conducted an unlawful search of his vehicle, thereby depriving

him of his Fourth Amendment rights.  The Government argues that Cabrera consented to a search

of his vehicle, that probable cause existed to search his vehicle, and that the discovery of the

black bag was inevitable because the Government seized the vehicle and conducted an inventory

search.

The parties submitted briefs in support of and opposition to the motion (Doc. No. 119,

124), and the Court held an evidentiary hearing on December 12, 2006.  During the hearing,

Cabrera learned that the Government was in possession of a videotape in connection with his

---

[1] Although the motion seeks to suppress all "all evidence related to the car search on
October 25, 2005, the search of defendant's person, his belongings and the car in which he was
riding, observations made by law enforcement officer(s), and any statements made by this
defendant as evidence obtained in violation of this defendant's Fourth and Fifth Amendment
rights under the United States Constitution and his rights under the Pennsylvania Constitution"
(Doc. No. 118, at 3), the facts described in the parties' subsequent filings and those elicited
during the evidentiary hearing suggest that Cabrera's motion is limited to the suppression of the
black bag containing the money shown to the confidential informant.

arrest.  Accordingly, the Court left the record open and held a supplemental hearing for the introduction of the videotape on April 24, 2007.  The motion is now ripe for disposition.

## II.    DISCUSSION

### A.    Consent to search

The Supreme Court has long established that "the search of property, without warrant and without probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment."  United States v. Matlock, 415 U.S. 164, 165-66 (1974); Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).  When an individual gives valid consent to a search of his property, "any evidence discovered during such a search may be seized and admitted at trial." United States v. Kim, 27 F.3d 947, 955 (3d Cir. 1994).  However, "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given."  Bumper v. North Carolina, 391 U.S. 543, 548 (1968).  The Government bears the "burden of proving by a preponderance of the evidence that the search was made pursuant to a voluntary consent."  United States v. Velasquez, 885 F.2d 1076, 1081 (3d Cir. 1989).

Whether consent was given voluntarily "is a question of fact to be determined from the totality of all the circumstances."  Schneckloth, 412 U.S. at 227; United States v. Wilson, 413 F.3d 382, 388 (3d Cir. 2005).  Relevant factors to consider include the "age of the accused, his education, his intelligence, whether he was advised of his constitutional rights, and whether the questioning was repeated and prolonged."  Kim, 27 F.3d at 955.  Other factors include whether the consent was gained through show of force, see United States v. Puglisi, 790 F.2d 240 (2d Cir. 1986), whether the police claimed that they could immediately execute the search without

consent, Bolden v. SEPTA, 953 F.2d 807, 824 (3d Cir. 1991) ("If the party conducting the search

claimed the authority to search without consent, that factor weighs against a finding of voluntary

consent."), and whether the defendant gave consent while in custody, United States v. Watson,

423 U.S. 411, 424 (1976).

In this case, the only evidence of record related to Cabrera's consent is a surveillance

video of the arrest[2] and the testimony of Agent Keith Kierzkowski, a special agent with the Drug

Enforcement Administration ("DEA") who served as a case agent in the investigation leading up

to Cabrera's arrest.  Cabrera was arrested at 2:30 p.m. in the Perkins parking lot by

approximately a dozen local and federal agents, several with firearms displayed.  Kierzkowski

was not at the scene when the arrest occurred, but appeared on the scene thereafter.[3]  At some

point after the arrest and while Cabrera was in custody, Kierzkowski approached Cabrera and

identified himself as a DEA agent.  (Tr. 8.)  Kierzkowski testified that Cabrera "immediately

stated that he wanted to cooperate with law enforcement," and that Cabrera advised the agents

that "he wanted to cooperate fully, he consented to the search of his vehicle, told us where the

keys were."  (Id.)  Finally, Kierzkowski testified that when he sought consent to search the

vehicle's trunk, "we pulled the keys out of [Cabrera's] pocket, and he told us which key was for

the trunk, as well."  (Id.)

---

[2] The surveillance video in this case is unilluminating.  For the few minutes preceding the arrest, the video showed various patrons (including Cabrera) enter and leave the restaurant.  After a dramatic pan left, and the deployment of perhaps a dozen officers from a pair of sport utility vehicles, the arrest itself unfolded anticlimactically behind a truck, which obstructed the camera's view entirely.  Absent from the video is any footage of the circumstances surrounding the time, place, or manner in which Cabrera purportedly gave consent.

[3] Agent Kierzkowski testified that he was not sure as about the length of time between the arrest and his arrival at the scene.

Although the Court credits fully Agent Kierzkowski's testimony, the record does not

support a finding that the search of Cabrera's vehicle was consensual.  Because Kierzkowksi was

not present before Cabrera's arrest, his testimony does not address the circumstances that the

Court must consider in assessing the "totality of the circumstances."  Because Kierzkowski did

not arrive at the scene until some unspecified time after Cabrera was taken into custody, there is

no evidence as to what transpired between Cabrera's arrest and his statement that he desired to

fully cooperate.  Moreover, the record is silent as to Cabrera's intelligence, education, state of

mind, and as to the presence or lack of any force, threats, or other coercion that bore on his

consent.  The video of the entire scene, while not depicting Cabrera individually does show an

army of agents with guns drawn.  There are no facts of record to establish whether Cabrera was

subject to this show of force and whether Cabrera's alleged consent was affected by it.  Finally,

the fact of Cabrera's custody at the time of consent, and the nature of the arrest – multiple

officers with guns drawn – suggest that his consent may have been less than gratuitous.

Although there are no facts to suggest undue coercion, it is the Government's burden to

show voluntariness, and voluntariness cannot be assumed.  Based on the evidence before the

Court, the Government has not met its burden to show by a preponderance of the evidence that

Cabrera validly consented to a search of his vehicle or its contents.  The scant evidence reflects

that before purportedly giving consent, numerous armed officers arrested Cabrera and placed him

under arrest.  Although aware of the circumstances surrounding Cabrera's arrest, the

Government's presentation of evidence was limited to Agent Kierzkowski's testimony.  That

testimony, though credible, picks up midstream and leaves substantial gaps in the record.  For

instance, the record does not reflect who effectuated Cabrera's arrest, whether Cabrera was

informed of his constitutional rights after his arrest, or whether Cabrera was patted down or

otherwise searched after the arrest.  Once Kierzkowski arrived (at some unknown point after

Cabrera was already taken into custody), Cabrera appeared willing to cooperate.  But, the burden

rests with the Government to show that, under the totality of the circumstances, consent was

given voluntarily.  In this case, against the backdrop of a show of force and custodial consent, the

Government's fragmentary showing was insufficient to meet its burden, and accordingly the

Court finds that Cabrera did not give voluntary consent to a search of his vehicle.

### B.      Automobile exception

The Government argues that, even if Cabrera did not consent to a search of his vehicle,

the search of his vehicle was valid because the search fell within the "automobile exception,"

which "permits law enforcement to seize and search an automobile without a warrant if probable

cause exists to believe it contains contraband."  United States v. Burton, 288 F.3d 91, 100 (3d

Cir. 2002) (internal quotation marks omitted).  Probable cause, which is determined upon the

"totality of the circumstances," Illinois v. Gates, 462 U.S. 213, 238 (1983), exists "where the

facts and circumstances within the arresting officer's knowledge are sufficient to warrant a

reasonable person to believe an offense had been committed," United States v. McGlory, 968

F.2d 309, 342 (3d Cir. 1992).  In this case, probable cause existed to believe that Cabrera was a

participant in a sizable drug transaction, and that his vehicle contained the black bag with the

money.

Kierzkowski testified that he was advised by the confidential informant that "Cabrera

showed the confidential informant a black bag containing a large amount of money and some

CDs after Andujar contacted Cabrera via mobile phone.  (Tr. 7.)  Kierzkowski further testified

that the confidential informant told Kierzkowski that Cabrera "came to a car parked around from the [confidential informant's] vehicle, obtained a bag, came over to the [confidential informant] and showed him the bag and the money inside the bag and then left." (Tr. 26-27.) Kierzkowski therefore would have cause to believe that Cabrera was involved with the drug purchase, and that the cash that was to be used in the transaction could be found in Cabrera's vehicle's trunk. Upon these facts alone, the Court could find that sufficient probable cause existed to trigger the automobile exception. The search, therefore, did not violate the Fourth Amendment.

## III.    CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to suppress. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **Criminal Action No. 1:05-CR-422** |
| **v.** | **:** | |
| | **:** | **(Chief Judge Kane)** |
| **FAUSTO L. CABRERA,** | **:** | |
| **Defendant** | **:** | |

## <u>ORDER</u>

AND NOW, on this 31st day of May, 2007, upon consideration of Defendant Fausto

Cabrera's motion to suppress (Doc. No. 118) and for the reasons set forth in the accompanying

memorandum, **IT IS HEREBY ORDERED THAT** Defendant's motion to suppress (Doc. No.

118) is **DENIED**.

<br>

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania